OPINION OF THE COURT
Richard F. Kuhnen, J.
In this action to recover a balance of $1,117.79 and interest alleged to be owing on a promissory note plaintiff moves for summary judgment. Defendants cross-move for summary judgment on their counterclaims for offsets pursuant to subdivision (a) of section 1640 of title 15 of the United States Code.
The balance owing, although denied by the answer, is not placed in issue on this motion by the answering affidavit. The basis of defendants’ motion is that the loan document violates various provisions of the Federal Truth in Lending Act (US Code, tit 15, § 1601 et seq.), particularly regulation Z (12 CFR Part 226). These regulations have been incorporated into New York State law by section 353 of the Banking Law.
*179 The first challenge under the statute is “that the agreement states that there is no security agreement given, but further states that the plaintiff may use any insurance benefits under the contract to pay amounts due and owing. This is a violation of section 226.6 of Regulation Z.” This contention is amplified in the affidavit submitted by defendants’ counsel in which he states: “7. It is the defendants’ argument that the statement in the disclosure box at the top of the Loan Instrument to the effect that there was no security agreement is both contradictory and misleading to the average consumer when read in conjunction with the security interest being taken by the paragraph at the bottom of the Loan Instrument.”
The reference is to a box near the top of the instrument, printed in heavy black outline, containing a printed caption “security agreement”. The typed word “no” has been inserted in the box.
Section 9-105 (subd [1], par [l]) of the Uniform Commercial Code defines a “security agreement” as “an agreement which creates or provides for a security interest”. A “security interest” is defined by subdivision (37) of section 1-201 of the Uniform Commercial Code as “an interest in personal property or fixtures which secures payment or performance of an obligation”.
The insertion of the word “no” in the box would seem to be a. clear indication that no agreement is claimed to have been entered into between the parties “which creates or provides for a security interest”.
Nevertheless, in a separate paragraph, the ninth and last on the instrument and entitled “security”, the following appears: “security. (1) You may use any insurance benefits under this contract to pay amounts I owe”.
The position of defendants is that the provision for the use of any insurance benefits under the contract to pay any amounts owed is inconsistent with the statement that there is no security agreement. As counsel for defendants states in his memorandum, “It is the crux of this case that this retention of a security interest by the creditor, pursuant to a document which claims at the top to provide for no security agreement, is not a clear, conspicuous and meaningful disclosure of the terms of credit to the consumer”.
*180 We are inclined to agree. Relying upon the assurance that there is no security agreement, based upon the “no” in the box, a borrower might understandably skip the reading of the paragraph entitled “security”.
We hold therefore that this apparent inconsistency does not constitute a compliance with the clarity demanded by the Truth in Lending Act. Regulation Z of that act (12 CFR 226.6 [a]) states: “The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence”. Among the disclosures required is that having to do with security interests. Section 226.8 (b) (5) of title 12 of the Code of Federal Regulations requires “a clear identification of the property to which the security interest relates”.
The failure of the instrument to comply with the act, as pointed out, entitles defendants to an offset under section 1640 of title 15 of the United States Code in an amount of $862.38, representing twice the amount of the finance charge in connection with the transaction.
The second challenge made in defendants’ answer is: “7. That the insurance premiums were included in the amount financed without obtaining the election of both defendants indicating a voluntary desire to have credit insurance, violating Regulation Z § 226.4 (a) (5).”
The paragraph mentioned requires “[c]harges or premiums for credit, life, accident, health, or loss of income insurance, written in connection with any credit transaction” to be included in the finance charge unless “(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.” (12 CFR 226.4 [a] [5] [ii].)
In this case, defendant Allen R. Hawley did execute and sign a request for life and disability insurance and the cost was prominently listed on the form. According to plaintiff’s counsel, the insurance premium was excluded from the finance charge and, in any event, it was only the defendant Allen R. Hawley who elected to take the credit insurance and only his signature was necessary. Moreover, as counsel points out, where there are multiple borrowers, “the credi *181 tor * * * need furnish a statement of disclosures required by this Part to only one of them” (12 CFR 226.6 [e]; see Gantt v Commonwealth Loan Co., 573 F2d 520; Whitlock v Midwest Acceptance Corp., 449 F Supp 631, 641, revd 575 F2d 652). Defendants’ motion in this respect is therefore denied.
Defendants have also moved for permission to serve an amended answer setting up an additional violation of regulation Z, to wit, that “the terms ‘finance charge’ and ‘annual percentage rate’ are not printed more conspicuously than the other disclosure terms”.
Section 226.6 (a) of title 12 of the Code of Federal Regulations provides in part that: “where the terms ‘finance charge’ and ‘annual percentage rate’ are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be stated in figures and shall be printed in not less than the equivalent of * * * elite size typewritten numerals, or shall be legibly handwritten.”
The loan document submitted is in full conformity with these provisions of the section. Both figures are contáined in boxes outlined in broad black borders, one box entitled in print “finance charge”, the other “annual percentage rate” and the figures typewritten in the boxes are in elite size. To permit the amendment of the answer requested would be merely to postpone a future motion by plaintiff for summary judgment which would have to be granted. Although motions for leave to amend pleadings are freely granted in the absence of prejudice, the motion should be denied, as here, where the amendment is pointless. In addition, the facts upon which the amendment is sought to be based were all known to defendants at the time the answer was served.
We do not consider it significant that no affidavits of defendants have been submitted to the effect that they have in fact been misled or confused by the wording of the loan agreement which they challenge. As pointed out in Dzadovsky v Lyons Ford Sales (593 F2d 538, 539): “One of the legislative purposes of the Act is to enable consumers *182 to compare various available credit terms. Any proven violation of the disclosure requirements of the Act is presumed to injure a borrower by frustrating that purpose.” (See, also, Thomka v A.Z. Chevrolet, 619 F2d 246.) The act, as the Court of Appeals stated in Public Loan Co. v Hyde (47 NY2d 182, 186), “reflects a transition in policy from a philosophy of let-the-buyer-beware to one of let-the-seller-disclose”.
We have thus sustained only one of the three challenges posed by defendants, in each of which they make claim for an award of $862.38. We point out that even if we had sustained one or both of the additional challenges, only one award, in our opinion, would have been justified under the act, and then to a maximum of only $1,000 (US Code, tit 15, § 1640).
The plaintiff’s motion for summary judgment is granted for the amount claimed, with interest, but subject to an offset in the amount of $862.38, with interest, costs, and reasonable attorneys’ fees to be determined by the court upon application on notice.
(On reconsideration, July 24, 1981.)
Request has been made by plaintiff’s counsel to reconsider our decision of May 7,1981, in the light of the decision of the United States Supreme Court on June 8,1981, in the case of Anderson Bros. Ford v Valencia (452 US 205). That decision holds that an assignment of unearned insurance premiums is not such a “security interest” as requires disclosure under the Truth in Lending Act.
The Anderson decision does not mandate a revision in the decision made in this case. The issue here involved was not whether the assignment of unearned insurance premiums as a security interest must be disclosed by the lender. It was disclosed. The issue is rather whether the lender, having represented in the installment contract that no agreement exists as to security, may subsequently and on the face of the same instrument represent that insurance benefits may be used by it as security for any amounts owed by the borrower. As the decision herein indicates the lender may not do so within the provisions and regulations *183 of the Truth in Lending Act requiring clear, conspicuous, and meaningful disclosure.